**UNITED STATES BANKRUPTCY COURT**

DISTRICT OF NEW JERSEY

M.L. KING, JR. FEDERAL BUILDING

50 WALNUT ST., 3RD FLOOR

NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH  (973) 645-4693

BANKRUPTCY JUDGE  Fax: (973) 645-2606

**NOT FOR PUBLICATION**

**FILED**

JAMES J. WALDRON, CLERK

**OCT. 25, 2010**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

October 25, 2010

**LETTER OPINION**

**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Yablonsky & Associates, LLC
Ilissa Churgin Hook, Esq.
1430 Route 23 North
Wayne, New Jersey 07470
*Counsel for Plaintiff*

Arturi, D'Argenio, Guaglardi & Meliti, LLP
Jason S. Nunnermacker, Esq.
Mack Centre 1
365 W. Passaic Street, First Floor
Rochelle Park, New Jersey 07662
*Counsel for Defendants*

**Re:  Rzasa-Ormes, et al. v. Arturi, D'Argenio, Guaglardi & Meliti, LLP et al.
Adv. Proc. No. 09-01883 (DHS)
Lead Case No. 09-23708 (DHS) (In re Jeep Eagle 17, Inc.)**

Dear Counsel:

Before the Court is a motion by the Plaintiff Leigh Rzasa-Ormes ("Plaintiff") seeking summary judgment on Count I of the Amended Complaint ("Complaint") against Defendants Arturi, D'Argenio, Guaglardi & Meliti, LLP and Conrad Roncati ("Defendants"), pursuant to

Page 2
October 25, 2010

§§ 547 and 550 of the Bankruptcy Code. The Plaintiff, who is the president of the Debtor, seeks to avoid and recover preferential transfers (the "Transfers") to the Defendants in the total amount of $82,015.63.

In their Answer, the Defendants admit: that they received payments in the sum of $82,015.63, that the Transfers were to or for the benefit of the Defendants, that the Transfers were for or on account of an antecedent debt owed by the Plaintiff to Defendants, and that the payments were made within ninety (90) days of the Petition date. (Answer to Verified First Compl., ¶¶ 12-15, 21, 22, 24) ("Answer")  The Defendants deny that the Plaintiff was insolvent at the time of the Transfers or that the Transfers enabled the Defendants to "receive more" than they would have through a hypothetical Chapter 7 liquidation. (Answer, ¶¶ 23, 25)

For the reasons that follow, the Plaintiff's motion for summary judgment is granted. The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.


## FACTS AND PROCEDURAL HISTORY

**I.     Plaintiff's Statement of Facts**

On May 29, 2009, the Plaintiff filed an individual voluntary petition under chapter 11 of the Bankruptcy Code. (Pl.'s Cert. in Supp. of Mot. for Summ. J., ¶ 2) ("Pl.'s Cert.")  On June 10, 2009, the Plaintiff commenced this adversary proceeding seeking to avoid and recover Transfers to the Defendants in the sum of $82,015.63 for the benefit of the estate. (*Id.*)

Between March 13 and May 14, 2009, the Defendants received three transfers from an entity known as Rag Realty in the total sum of $50,000.00. (*Id.* at ¶ 5)  The Plaintiff owns a 50% interest in Rag Realty, LLC and is entitled to monthly distributions. (*Id.*)  On or about March 3, 2009, the Plaintiff indorsed a check from General Motors Corporation ("GM") made payable to Chevrolet of Upper Saddle River ("CUSR"), a defunct entity wholly owned by the Plaintiff, in favor of the defendants in the amount of $25,000.00. (*Id.* at ¶ 6)  In April 2009, the Plaintiff indorsed another check from GM made payable to CUSR, in favor of the defendants in the amount of $7,015.63. (*Id.* at ¶ 7)

On April 1, 2010, this Court entered an Order confirming the Debtor's Chapter 11 Plan. The Order provides that "based on the liquidation analysis set forth in the Second Amended Disclosure Statement, creditors will receive no less under the Plan than they would in liquidation." (Confirmation Order, p. 5, ¶ 18)

Page 3
October 25, 2010

## II.    Defendants' Additional Facts

The debt owed to the Defendants arose from a 1998 dispute between the Plaintiff and a business partner, which led to a mutual agreement to arbitrate in 2000. (Cert. of Jason Nunnermacker in Opp. to Pl.'s Mot. for Summ. J., ¶¶ 2-3) ("Nunnermacker Cert.") The arbitration lasted five years, including a break during which the Plaintiff filed suit against the arbitrator, Conrad Roncati, a defendant in this matter, alleging bias and inappropriate conduct, in an apparent attempt to force his recusal. (Nunnermacker Cert., ¶¶ 7-8) The suit was dismissed, *sua sponte*, as being without merit. (*Id.* at ¶ 8) In 2005, at the conclusion of the arbitration, an award was entered that directed the Plaintiff to pay one half of the arbitrator's fees and costs, including attorneys' fees owed to Arturi, D'Argenio, Guaglardi & Meliti, LLP. (*Id.* at ¶ 9) The Superior Court of New Jersey, Chancery Division, Bergen County, confirmed the award. (*Id.* at ¶ 10)

The Plaintiff subsequently filed a second suit in state court against Roncati, again alleging bias and inappropriate conduct. (*Id.* at ¶ 13) Roncati filed a counterclaim for his fees and costs. (*Id.* at ¶ 14) In July 2008, the Plaintiff's claims were dismissed with prejudice, on the basis of *res judicata* from the earlier suit, and concurrent findings of no wrongdoing by Roncati in the Appellate Division and the state Supreme Court. (*Id.* at ¶ 15) The trial proceeded on the issue of Roncati's counterclaims and on February 13, 2009, the court entered a Final Judgment awarding Roncati fees and costs in the amount of $201,791.93. (*Id.* at ¶ 18) The judgment was docketed on February 19, 2009 as a lien against the Plaintiff's real property. (*Id.* at ¶ 19)

Pursuant to their collection efforts, the Defendants received payments, as noted in the Plaintiff's Statement of Facts, of $25,000.00 and $7,015.63 on March 3, 2009 and early April 2009, from CUSR. (*Id.* at ¶ 20) CUSR is not an entity in bankruptcy, nor is it listed on the bankruptcy petition as an asset of the Plaintiff's estate. (*Id.* at ¶ 21) Therefore, the Defendants deny that the property transferred by CUSR was property of the Plaintiff's estate. (*Id.* at ¶¶ 20-21, 32-34)

In further efforts to collect on the Final Judgment, the Defendants had a Writ of Execution issued on March 3, 2009, and were preparing to levy on the Plaintiff's Rag Realty interest. (*Id.* at ¶¶ 22-24) On March 12, 2009, in lieu of formal execution, the Defendants reached an agreement with the Plaintiff allowing them to garnish the Rag Realty income. (*Id.* at ¶¶ 26-30) The agreement was memorialized in a Consent Order entered and filed in the Superior Court that day. (*Id.*) Accordingly, the Defendants argue that the Rag Realty transfers, made pursuant to the Consent Order, should relate back to the date of the Final Judgment, which was entered and docketed outside the ninety (90) day preference period prior to filing the bankruptcy petition. (*Id.* at ¶¶ 32-36)

Page 4
October 25, 2010

## DISCUSSION

**I.     Summary Judgment Standard**

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf

Page 5
October 25, 2010

the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

## II.     Avoidable Preferences under § 547(b)

Section 547 of the Bankruptcy Code allows the trustee or the debtor-in-possession to dismantle certain transactions between a debtor and its creditors that took place within the ninety (90) days immediately preceding the bankruptcy filing. *Barnhill v. Johnson,* 503 U.S. 393, 394, 118 L. Ed. 2d 39, 112 S. Ct. 1386 (1992); *see also* 11 U.S.C. § 1107 (providing debtor-in-possession with all rights, duties and functions of the trustee). If the bankruptcy court determines that such preferential transfers occurred, the creditor is not allowed to maintain its improved position, and must return any preferential transfers it received. *Id.* Section 547(b) defines a preferential transfer:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made--
>
> (A) on or within 90 days before the filing of the petition; or
>
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if--
>
> (A) the case were a case under Chapter 7 of this title
>
> (B) the transfer had not been made; and

Page 6
October 25, 2010

>    (C) such creditor received payment of such debt to the extent
>    provided by the provisions of this title.

11 U.S.C. § 547(b).

The purpose of section 547's avoidance power is "to foster equality of treatment among creditors and to discourage creditors from incapacitating a firm by racing to attach its assets shortly before bankruptcy." *MR Wind Down Co. v. Rock-Tenn Converting Co. (In re Markson Rosenthal & Co.)*, 2009 Bankr. LEXIS 3901 (Bankr. D.N.J. Oct. 27, 2009) (*citing Trustee v. Mappa (In re Pineview Care Ctr., Inc.),* 152 B.R. 703, 705 (D.N.J. 1993)). Pursuant to section 547(g), the trustee or the debtor-in-possession bears the burden of proving avoidability of a transfer under section 547(b) by a preponderance of the evidence. *Id.; see* 11 U.S.C. § 547(g).

The Defendants in this action, by way of their Answer to Count I of the Complaint, admit to elements (1), (2), and (4) of § 547(b): receiving payments for their benefit, on account of an antecedent debt, that occurred within 90 days of the petition date. (Answer, ¶¶ 21, 22, 24)

The Defendants deny element (3), that the Plaintiff was insolvent at the time of the transfers, but they have failed to produce evidence that would rebut the statutory presumption of insolvency under § 547(f). *See* 11 U.S.C. § 547(f). (*Id.* at ¶ 23) Accordingly, the Court deems the insolvency element to be satisfied. The Defendants also deny element (5), that the Transfers enabled them to receive more than they would have through a hypothetical Chapter 7 liquidation. (*Id.* at ¶ 25) Again, the Defendants have produced no evidence in support of their position. In contrast, the Plaintiff points to the Confirmation Order, which provides that "based on the liquidation analysis set forth in the Second Amended Disclosure Statement, creditors will receive no less under the Plan than they would in liquidation." (Confirmation Order, p. 5, ¶ 18) The Court therefore deems this element to be satisfied.

It should be noted, however, that in opposing the Plaintiff's motion for summary judgment, the Defendants now assert that the Rag Realty transfers, which occurred within the preference period, should relate back to the time the Consent Order satisfying the Final Judgment was entered and docketed, which occurred outside the preference period. (Nunnermaker Cert., ¶¶ 32-36) Due to the wording of the Complaint in paragraphs 15 and 20, the Court cannot determine whether the admission in paragraph 24 of the Answer refers specifically to element (4) of § 547(b), or whether the Defendants simply admitted that the payments were received during the preference period, without considering the exact nature of the payments as "transfers" as that term is used in § 547(b). In light of the directive to "view all the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," however, the Court will assume that the Defendants dispute the timing of the Rag Realty transfers as they relate to § 547(b)(4). *Pacitti v. Macy's*, 193 F. 3d 766, 772 (3d Cir. 1999).

Page 7
October 25, 2010

Therefore, two issues remain before the Court: first, whether the CUSR transfers were "of an interest of the debtor in property," and second, whether the Rag Realty transfers were made within 90 days before the filing of the petition. Pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056, the Court will review the facts at hand to determine whether a genuine issue of material fact exists for trial.

### A.     An Interest of the Debtor in Property

A threshold issue in determining whether a particular transfer is a preference is whether the transfer involved an "interest of the debtor in property." 11 U.S.C. § 547(b). The Supreme Court has defined that phrase to mean "property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceedings." *Begier v. IRS*, 496 U.S. 53, 58, 110 L. Ed. 2d 46, 110 S. Ct. 2258 (1990). The concern of § 547(b) is that the estate will be diminished. *Ellenberg v. First National Bank (In re Hollvey)*, 15 B.R. 850. 852 (Bankr. N.D. Ga. 1981). Accordingly, a payment made by a third party on behalf of a debtor cannot be a preference. *HLI Creditor Trust v. Hyundai Motor Co. (In re Hayes Lemmerz Int'l, Inc.*, 329 B.R. 136 (Bankr. D. Del. 2005).

In *Hayes Lemmerz*, the transfer in question was a check delivered to the creditor bearing the name "CMI-Texas, Inc." *Id.* at 141. That name differed from the name being used by the debtor at the time of transfer, although "CMI-Texas, Inc." was listed as a former name on the bankruptcy petition. *Id.* Nevertheless, the court held that simply relying on the petition, without presenting any evidence that the transfer diminished the estate, was insufficient to establish the funds as an interest of the debtor in property for summary judgment purposes. *Id.* at 141-42.

In this case, GM issued checks payable to CUSR, not to the Plaintiff or any entity previously known to be under her control. In her Certification, the Plaintiff refers to CUSR as a "defunct entity wholly owned by the Plaintiff." (Pl.'s Cert., ¶¶ 6-7) Although the Defendant correctly points out that CUSR was not listed among the Plaintiff's assets on her petition, the Plaintiff did list a 100% interest in an entity known as "Ramsey Chevrolet – Geo, Inc." ("Ramsey Chevrolet"). (Pl.'s Cert. in Reply to Def.'s Objection, ¶ 3) Moreover, in her reply papers, the Plaintiff presented evidence that Ramsey Chevrolet and CUSR are one and the same. Specifically, Ramsey Chevrolet traded as CUSR. (*Id.* at ¶ 3, Ex. A) The Plaintiff notes that she indorsed the checks directly to the Defendants, rather than first depositing them into the Ramsey Chevrolet account, because the account had been closed. *(Id.* at ¶ 4) Nevertheless, it is clear that the checks payable to CUSR were property of Ramsey Chevrolet and therefore 100 percent owned by the Plaintiff. When these sums come into the Plaintiff's estate, her creditors will benefit. Accordingly, the Court is satisfied that the Plaintiff's estate has a sufficient interest in the CUSR monies and summary judgment is granted as to those payments.

Page 8
October 25, 2010

### B.    Timing of the Transfers

The timing of preferential transfers is governed by section 547(e).  11 U.S.C. § 547(e). The dissent in *Hagen,* 922 F.2d 742 (11th Cir. 1991)[1], explained:

> "Section 547(e)(2) determines the date that the transfer was made by comparing the date of perfection and the date that the transfer took effect. It is therefore necessary first to determine when the transfer was perfected. Section 547(e)(1)(B) defines perfection as occurring "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee."

*In re Hagen,* 922 F.2d 742, 746 (11th Cir. 1991).  Section 547(e)(1)(B) requires the Court to determine, under state law, whether another creditor could obtain a superior lien to the Defendants' transferred interest.  *See id.*  The date when it could not is the date of perfection.  *Id.*

Having determined when perfection occurred, the Court must then determine when the transfer "took effect."  *Id.* at 747.  Neither the Bankruptcy Code or the Uniform Commercial Code defines "took effect."  However, logic dictates that a transfer can potentially "take effect" on "either the date of perfection or the date that a security [agreement] was [entered into]."  *Id.* However, the proper analysis should be the date the security agreement was entered into, because otherwise the wording of § 547(e)(2) would be superfluous in that it compares the date of perfection to the date of perfection.  *Id.*

In this case, the preference period began on February 28, 2009, ninety days prior to the filing of the petition.  The Defendants are judgment creditors pursuant to a Final Judgment entered on February 13, 2009 by the Superior Court, and docketed on February 19, 2009. (Nunnermacker Cert., ¶¶ 18-19)  The Final Judgment, when docketed, created a lien on the Plaintiff's real property, but did not create a lien on personalty.  (*Id.* at ¶ 19)  The Defendants point to N.J.S.A. 2A:17-10 for the proposition that a lien against personal property in favor of a judgment creditor is created by a levy, which relates back to the date the writ of execution is delivered to the sheriff.  *See also In re Ramco Am. Int'l, Inc.*, 754 F.2d 130, 132 (3d Cir. 1985). When a judgment creditor levies on property, this perfects the lien.  *In re Blease,* 605 F.2d 907 (3d Cir. 1979).

Here, however, a levy never occurred.  The "execution" did not occur until the Consent Order was entered and docketed on March 12, 2009, inside the preference period.  (*Id.* at ¶¶ 26-30)  Therefore, analysis under § 547(e) leads to the conclusion that the date of perfection and the date the transfer "took effect" are March 12, 2009.  As such, the Rag Realty transfers were

---

[1] The majority in *Hagen* decided the issue on § 547(b)(5) grounds.  The dissent believed that § 547(e) should have controlled and explained the proper analysis under that subsection.  *In re Hagen,* 922 F.2d 742 (11th Cir. 1991).

Page 9
October 25, 2010

"made" as defined under § 547(b)(5) within 90 days before the petition date, and are therefore avoidable by the Plaintiff. Despite these facts, the Defendants argue that in determining whether the transfers constitute a preference, the Court should "look . . . through form to substance, [and] treat the transaction according to its real nature." *Katz v. First Nat'l Bank of Glen Head*, 568 F.2d 964, 970 (2d. Cir. 1977). The Defendants argue that in light of the Plaintiff's "many years of . . . frivolous and spiteful [litigation] tactics," as recognized by the Superior Court, equitable principles should prompt the Court to relate the date of perfection back to the entry and docketing of the Final Judgment. (Def.'s Mem. of Law in Opp. to Pl.'s Mot. for Summ. J., p. 8-10); *see also Nelson v. Nelson (In re Bailey)*, 17 B.R. 50, 52 (Bankr. W.D. Ark. 1981).

However, no "relation-back" theory is legally applicable to the facts herein. Certainly, unlike the date of levy which relates back to the delivery of a writ of execution to the Sheriff through N.J.S.A. 2A:17-10, no statute exists allowing the transfers pursuant to the Consent Order, or the Consent Order itself, to relate back to the Judgment Date and thus fall outside the preference period. Accordingly, summary judgment is granted as to the Rag Realty payments.

## **CONCLUSION**

The Defendant has not raised triable issues of fact as to the Plaintiff's interest in the CUSR monies or as to the timing of the Rag Realty transfers. Therefore, the motion for summary judgment is granted in its entirety.

An Order in Conformance with this Opinion has been entered by the Court and is attached hereto.

                                Very truly yours,

                                s/ *Donald H. Steckroth*
                                   DONALD H. STECKROTH
                                   UNITED STATES BANKRUPTCY JUDGE

Enclosure